Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and there is no dispute as to the misjoinder or non joinder of parties.
2. On the date of the hearing giving rise to this claim, the employer was self-insured for workers compensation purposes, with AIG Claim Service acting as its servicing agent.
3. Plaintiffs average weekly wage was $833.35, which is sufficient to yield the maximum compensation rate for 1996 of $492.00.
4. Along with the deposition transcripts, included in the record in this case are Dr. Lincolns operative report and discharge instructions dated 29 and 30 November 1996, the accident report completed by Trooper Hartsell, and the medical records from Baptist Hospital of Cocke County. Finally, over objection by plaintiff, the subpoena to obtain plaintiffs medical records dated 14 January 1997 is admitted into evidence in the matter.
5. The issues to be determined from the hearing are whether plaintiff sustained a compensable injury by accident on 23 November 1996, and if so, to what benefits is he entitled; whether defendant is estopped from denying liability for the injuries sustained by plaintiff on 23 November 1996; and whether plaintiffs claim is barred by N.C.G.S. 97-12.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was forty-three years old. Plaintiff has an eighth-grade education. Prior to 23 November 1996, plaintiff had been employed as a truck driver for ten to twelve years, and had been employed as a tractor trailer driver for defendant for approximately two years. On 23 November 1996 plaintiff maintained a valid commercial drivers license.
2. On 23 November 1996, which was a Saturday, plaintiff was dispatched to pick up and deliver a load of pre-forms to Illinois. Because plaintiff did not expect to make a trip that evening, he had consumed several alcoholic beverages prior to leaving his house at approximately 4:00 p.m. that day to pick up the truck. Plaintiff picked up the tractor at 5:00 p.m., and then picked up the trailer of pre-forms in Enka, North Carolina at Southeastern Container.
3. As plaintiff was leaving for Illinois, he picked up a friend, Marilyn Burrell, who accompanied him on his trip. Ms. Burrell was not authorized to be a passenger on plaintiffs commercial vehicle, and he was later cited for this violation.
4. Plaintiff was traveling westbound Interstate 40 through Tennessee when at approximately 8:15 p.m. he lost control of his tractor trailer. This particular stretch of westbound I-40 is curvy and mountainous, and at night is dark as there are no streetlights. This four-lane highway is separated by a concrete divider, with the inside lane of westbound I-40 being narrow. A number of accidents involving tractor trailers coming in contact with the concrete divider on this curvy and hilly road have occurred at the location where plaintiff lost control of his truck.
5. Tennessee state Highway Patrol Trooper Randy Hartsell was dispatched to the accident scene and arrived there at 8:38 p.m., approximately fifteen minutes after being dispatched. Trooper Hartsell found plaintiffs truck overturned and blocking both westbound lanes of I-40. Plaintiff was lying outside the truck. Shortly after Trooper Hartsell arrived, the emergency medical personnel arrived, so the trooper did not have an opportunity to talk to plaintiff on the scene. However, the trooper noticed the smell of alcohol about plaintiffs person. Trooper Hartsell also found some beer containers inside the truck, although the accident report does not relate this finding.
6. Based upon his investigation of the accident scene, it was the troopers opinion that the accident was caused by plaintiff driving around the curve in the road too fast, which caused him to lose control of his truck and hit the concrete barrier. After the truck hit the barrier, the cargo in the trailer shifted and the truck overturned. The factors contributing to the accident were, in the troopers opinion, drinking and speeding.
7. Plaintiff was taken to Baptist Hospital of Cocke County in Newport, Tennessee, where he was admitted at 9:32 p.m., at which time blood work was taken by a laboratory technician at the hospital. A chemistry panel indicates that plaintiff had 233.0 mg/dL ethyl alcohol. There is a handwritten entry below the panel results that reads: "(Intoxication 101-350 mg/dL). There is no evidence of record to show who made this handwritten notation on the chemistry panel report, or even how to interpret the result. Defendant presented insufficient evidence to authenticate the alcohol test results.
8. While at the hospital, plaintiff was seen and treated by Dr. Trzil, and underwent x-rays in addition to the labwork. The records from the emergency room visit do not indicate plaintiffs state of being, except that the radiological study was noted to have been limited by the fact that plaintiff was being uncooperative. There are no reports in these records that plaintiff appeared to behave as if he were intoxicated, impaired, or otherwise under the influence of alcohol. In the nurses notes plaintiff was noted to be alert instead of being disoriented, lethargic, or exhibiting slurred speech.
9. After he finished working at the accident scene, Trooper Hartsell proceeded to the hospital to finish the accident investigation. At 2:10 a.m., when the trooper was at the hospital, a urine sample was taken from plaintiff for DOT drug screening. The trooper indicated that plaintiff appeared to be intoxicated at the hospital. However, the trooper gave no description of actual appearance or behavior suggesting impairment on the part of the plaintiff, and he did not describe what he meant by plaintiff "appearing intoxicated.
10. Even if plaintiff were intoxicated at the time of the motor vehicle accident, there is insufficient evidence of record to show that the accident was proximately caused by plaintiffs intoxication.
11. At 2:45 a.m. plaintiff was discharged from the hospital into the custody of the trooper, who took plaintiff to the courthouse and cited him for driving without a drivers license in his possession, not having a logbook in the truck, having an unauthorized passenger in the commercial vehicle, and driving while under the influence. Plaintiff subsequently was found guilty of reckless driving instead of driving under the influence. The remaining charges were dismissed.
12. Plaintiffs employment was terminated with defendant on 25 November 1996.
13. When plaintiff was released from Baptist Hospital in Tennessee, he was instructed to follow up with an orthopedist. Plaintiff first saw Dr. Lincoln, an orthopedic surgeon, on 27 November 1996, four days after the motor vehicle accident. Dr. Lincoln diagnosed a displaced fracture of plaintiffs right distal tibia. On 29 November 1996 Dr. Lincoln performed an open reduction and internal fixation of plaintiffs fracture at St. Josephs Hospital in Asheville. A surgical cast was placed on plaintiffs right ankle after the surgery.
14. Plaintiff continued to treat post-operatively with Dr. Lincoln. On 17 December 1996 Dr. Lincoln replaced the surgical cast with another cast, and on 14 January 1997 Dr. Lincoln placed an ambulatory cast on plaintiffs right ankle. During the recuperation period, Dr. Lincoln prescribed pain medication, and by 17 January 1997 plaintiff was able to tolerate full weight-bearing.
15. When he was deposed in October 1998, Dr. Lincoln had last seen plaintiff on 15 January 1998, and it was his opinion that plaintiff was at maximum medical improvement as of that date. In his deposition on 13 October 1998 Dr. Lincoln assigned a twenty percent permanent partial impairment rating to plaintiffs right ankle as a result of the motor vehicle accident of 23 November 1996.
16. According to Dr. Lincoln, plaintiff was totally unable to drive a truck from 23 November 1996 through 5 March 1997. As of 6 March 1997 plaintiff was capable of driving a truck not more than three to four hours if he wore an ankle corset. Dr. Lincoln released plaintiff to return to work as of 24 March 1997; however, Dr. Lincoln felt that plaintiff should not drive long distances until plaintiff felt that he could safely do so.
17. After the motor vehicle accident sustained by plaintiff on 23 November 1996, plaintiff returned to work for a new employer, Rental Uniform Company, on 4 April 1997, earning $5.25 per hour and working forty to forty-five hours per week. In February 1998 plaintiff was given a raise to $6.00 per hour. Defendant has not come forward with evidence to show that plaintiff was capable of obtaining and performing employment suitable for his physical capacity prior to his return to work on 4 April 1997.
18. As a result of the injury to his ankle sustained in the motor vehicle accident on 23 November 1996, plaintiff will continue to need periodic follow-up medical care.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on 23 November 1996. N.C.G.S. 97-2(6).
2. Even if plaintiff were intoxicated at the time of the compensable injury by accident on 23 November 1996, defendant has not met its affirmative burden of showing that plaintiffs intoxication was a proximate cause of the injury by accident. Therefore, the intoxication defense raised by defendant does not bar plaintiffs claim for benefits resulting from his 23 November 1996 injury by accident. N.C.G.S. 97-12; Inscoe v. Industries,Inc., 292 N.C. 210, 232 S.E.2d 449 (1977).
3. As a result of the compensable injury by accident sustained by plaintiff on 23 November 1996, he was temporarily totally disabled from that date through 4 April 1997, the date on which he returned to work for a new employer. Plaintiff is entitled to weekly temporary total disability benefits in the amount of $492.00 from 24 November 1996 through 3 April 1997. N.C.G.S. 97-29.
4. Plaintiffs return to work at wages less than his preinjury average weekly wage has rendered him temporarily partially disabled since 4 April 1997. N.C.G.S. 97-30. Under this statutory provision, plaintiff is entitled to compensation in the amount of two-thirds of the difference between his preinjury and post-injury average weekly wages, with these benefits beginning 4 April 1997 and continuing until he was rated on 13 October 1998 if he selects payment for his permanency rating in lieu of ongoing temporary partial disability benefits thereafter. If plaintiff elects to receive ongoing temporary partial disability benefits instead of payment for his permanent partial impairment, these benefits shall continue for a period of time of no longer than 300 weeks from the date of the injury.
5. Plaintiff has sustained a twenty percent permanent partial impairment rating to his right ankle as a result of the compensable injury by accident on 23 November 1996, and would therefore be entitled to 28.8 weeks of compensation in the amount of $492.00 per week should he elect to receive this compensation. N.C.G.S. 97-31(14).
6. After 13 October 1998, the date on which he was rated, plaintiff is entitled to choose the more favorable of his remedies under N.C.G.S. 97-30 (ongoing temporary partial disability benefits) or N.C.G.S. 97-31(14) (scheduled permanent partial disability benefits).
7. Plaintiff is entitled to have all medical treatment for his right lower extremity provided by defendant, so long as the treatment is or was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiffs disability. N.C.G.S.97-2(19); 25, 25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff weekly temporary total disability benefits in the amount of $492.00 from 24 November 1996 through 3 April 1997. This compensation has accrued and shall be paid to plaintiff in a lump sum. This award is subject to the attorneys fee approved below.
2. Defendant shall pay to plaintiff weekly temporary partial disability benefits in the amount of two-thirds of the difference between $492.00 and plaintiffs post-injury average weekly wage beginning 4 April 1997, and continuing through 13 October 1998 or thereafter up to 300 weeks, depending upon the election made by plaintiff. This award is subject to the attorneys fee approved below.
3. If plaintiff so elects, defendant shall pay to plaintiff weekly benefits in the amount of $492.00 for 28.8 weeks for his permanent partial impairment. This award, if elected by plaintiff, is subject to the attorneys fee approved below.
4. Plaintiffs counsel of record is entitled to a reasonable attorneys fee of twenty-five percent of the compensation owed plaintiff which shall be paid as follows. Defendant shall forward twenty-five percent of accrued compensation benefits owed plaintiff under this award directly to plaintiffs counsel of record. Plaintiffs counsel shall also be forwarded every fourth compensation check of any ongoing compensation benefits owed plaintiff under this award.
5. Defendant shall provide for all medical compensation that plaintiff has received or will receive that was and is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiffs disability. Plaintiffs entitlement to ongoing medical benefits is limited to two years after defendants last payment of indemnity or medical benefits to plaintiff.
6. Defendant shall bear the costs of this proceeding.
This the ___ day of June, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/bjp